1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUANITA LYNN SPOTTED ELK,<br><br>                    Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner<br>of Social Security,<br><br>                Defendant. | Case No. C15-1588-MJP-BAT<br><br>**REPORT AND<br>RECOMMENDATION** |

13    Juanita Lynn Spotted Elk seeks review of the denial of her application for Supplemental

14  Security Income.  She contends the ALJ erred in (1) evaluating the opinions of the treating and

15  examining providers, (2) finding her not fully credible, and (3) assessing her residual functional

16  capacity.  Dkt. 11.  The Court recommends the case be **REVERSED** and **REMANDED** for

17  further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

18    **BACKGROUND**

19    Ms. Spotted Elk is 44 years old, has a GED and some college education, and has no past

20  relevant work.  Tr. 42-44, 145, 162.  In February 2012, she applied for benefits, alleging

21  disability as of the date of her application.  Tr. 145.  After her application was denied initially

22  and on reconsideration, the ALJ conducted a hearing and, on January 31, 2014, issued a decision

23  finding Ms. Spotted Elk not disabled.  Tr. 19-29.  The Appeals Council denied Ms. Spotted Elk's

1    request for review, making the ALJ's decision the Commissioner's final decision.  Tr. 1.

2                                    **THE ALJ'S DECISION**

3            Utilizing the five-step disability evaluation process,[1] the ALJ found that Ms. Spotted Elk

4    had not engaged in substantial gainful activity since the alleged onset date; she had the following

5    severe impairments: depressive disorder, generalized anxiety disorder, post-traumatic stress

6    disorder (PTSD), and alcohol abuse, currently in remission; and these impairments did not meet

7    or equal the requirements of a listed impairment.[2]  Tr. 21-22.  The ALJ found that Ms. Spotted

8    Elk had the residual functional capacity to perform a full range of work at all exertional levels;

9    she has the mental capability to adequately perform the mental activities generally required by

10   remunerative work as follows: understand, remember, and carry out simple instructions required

11   of jobs classified at a specific vocational preparation (SVP) rating of one or two, or unskilled

12   work; she can make judgments on simple work-related decisions and she can respond

13   appropriately to supervisors, but she should not be required to work in close coordination with

14   co-workers where teamwork is required; she can perform work that requires only occasional

15   exposure to or interaction with the general public.  Tr. 23.  The ALJ found that Ms. Spotted Elk

16   has no past relevant work, but there are jobs that exist in significant numbers in the national

17   economy that she could perform, and that she was therefore not disabled.  Tr. 28-29.

18                                      **DISCUSSION**

19   **A.       Medical evidence**

20           Ms. Spotted Elk argues that the ALJ erred in evaluating the medical opinions of treating

21   psychiatrist Tawnya Christiansen, M.D., and examining psychologists Richard Washburn, Ph.D.,

22   and John Wingert, Ph.D.  Dkt. 11 at 3.  In general, the ALJ should give more weight to the

23   _____
[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester*, 81 F.3d at 830-31.

      *1.    Dr. Christiansen*

In December 2013, Dr. Christiansen opined that the limitations caused by Ms. Spotted Elk's symptoms prevented her from engaging in gainful work. Tr. 381-82. Dr. Christiansen opined that Ms. Spotted Elk was quite limited in her ability to maintain daily activities and social functioning. *Id.* She could not successfully interact on a consistent basis with co-workers, supervisors, and the public or maintain a predictable work schedule. *Id.* She was quite limited in her ability to maintain daily activities and social functioning, and was impaired in the ability to maintain concentration, persistence and pace. *Id.* Dr. Christiansen believed that Ms. Spotted Elk's current condition would deteriorate and she would decompensate if she were exposed to the stress involved in even the simplest full-time employment. *Id.* Dr. Christiansen assigned a Global Assessment of Functioning score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).

The ALJ gave the opinion little weight for several reasons. First, the ALJ found that it appeared from the treatment records that Dr. Christiansen had seen Ms. Spotted Elk on only two occasions, in August and September of 2013. Tr. 26. But this finding ignored Dr. Christiansen's report that Ms. Spotted Elk began her treatment in Dr. Christiansen's clinic in April 2013, seeing

1   counselor Beatriz Salgado one to two times per month.  Tr. 381.  Dr. Christiansen noted that her

2   opinion was based in part on the clinical observations of her team members.  Tr. 382.  As the

3   psychiatrist overseeing Ms. Spotted Elk's care, Dr. Christiansen's involvement in her case was

4   not limited to two individual visits.  This was not a legitimate reason to reject the opinion.

5        Second, the ALJ found that Dr. Christiansen stated in her treatment notes that Ms.

6   Spotted Elk "likely met" the criteria for PTSD and had "rule out" diagnoses for depression and

7   anxiety disorder, which the ALJ found to be in stark contrast to the definitive diagnoses of these

8   conditions in her December 2013 letter.  Tr. 26.  The ALJ correctly noted that Dr. Christiansen

9   did not definitively diagnose PTSD after their first meeting.  Tr. 378.  However, after their

10  second meeting, Dr. Christiansen stated: "She also meets criteria for PTSD based upon today's

11  interview and confirmation of history provided at initial assessment."  Tr. 375.  Dr. Christian

12  made an affirmative diagnosis of PTSD when she had enough information to do so.  This is

13  entirely consistent with the diagnosis she included in her December 2013 opinion.  Likewise,

14  regarding depression, Dr. Christiansen's diagnosis evolved from "Depression NOS r/o MDD,

15  recurrent" in August 2013, to "Major Depression" in her December 2013 opinion.  Tr. 378, 381.

16  The ALJ failed to acknowledge that Dr. Christiansen's diagnoses evolved with her continued

17  treatment of Ms. Spotted Elk.  The discrepancy between Dr. Christiansen's initial, tentative

18  diagnoses and her definitive diagnoses made four months later, after additional treatment by Dr.

19  Christiansen and the clinical staff, was not a legitimate reason to discount her opinion.

20       Next, the ALJ found that Dr. Christiansen failed to mention the effects of Ms. Spotted

21  Elk's longstanding alcohol abuse and recovery therefrom in her December 2013 opinion.  Tr. 26.

22  In her treatment notes, Dr. Christiansen thoroughly discussed Ms. Spotted Elk's history of

23  alcohol abuse with 8 years of reported sobriety, and diagnosed alcohol use disorder, severe, in

remission.  Tr. 375, 378.  Dr. Christiansen knew of Ms. Spotted Elk's history of alcohol abuse and long-term reported remission.  The ALJ did not explain how Dr. Christiansen's failure to mention this history undermined her opinion, or what effects Ms. Spotted Elk's history of alcohol abuse might have on her current function that Dr. Christiansen supposedly ignored.  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  This the ALJ failed to do in faulting Dr. Christiansen for not mentioning Ms. Spotted Elk's history of alcohol abuse.  This was not a legitimate reason to reject her opinion.

Next, the ALJ rejected Dr. Christiansen's opinion because despite Ms. Spotted Elk's reportedly severe symptoms, Dr. Christiansen described her appearance in September 2013 at being casually dressed with good hygiene, cooperative, having normal speech, attentive concentration, and a bright affect.  Tr. 26.  While Dr. Christiansen noted these things, she also noted that Ms. Spotted Elk had an anxious mood, thoughts verging on perseverative, needed to constantly assess her safety and others' intentions towards her, and showed confusion and questioning of her own decisions.  Tr. 375.  Dr. Christiansen took all this information, along with the other findings from her clinical assessment and information from the treatment records, and synthesized it into her January 2013 opinion.  The ALJ took some of Dr. Christiansen's observations and made his own interpretation.  But the ALJ may not substitute his own interpretation of the medical evidence for the opinion of a medical professional.  *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).  The fact that the ALJ could pick out some normal observations from one visit does not undermine Dr. Christiansen's overall opinion.  This was not a legitimate reason to reject the opinion.

1          Next, the ALJ noted that Dr. Christiansen did not formally test Ms. Spotted Elk's

2    memory.  Tr. 26.  But Dr. Christiansen's letter contained no opinion about Ms. Spotted Elk's

3    memory.  The lack of formal memory testing was not a valid basis to discount the opinion.

4          Finally, the ALJ gave no weight to Dr. Christiansen's assessment of a GAF score of 45,

5    stating that he rejected Dr. Christiansen's proposition that this score stemmed solely from Ms.

6    Spotted Elk's mental impairments, and finding that Dr. Christiansen appeared to factor in Ms.

7    Spotted Elk's difficulties with finances and her children, factors which are extraneous to the

8    disability adjudication process.  Tr. 26.  Although a GAF score may be relevant evidence of a

9    claimant's overall level of functioning, a GAF score is generally not dispositive of mental

10   disability for social security purposes.  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th

11   Cir. 2008).  The fact that the GAF score incorporated information not relevant to the disability

12   determination may be a valid reason to reject that score.  But the fact that Dr. Christiansen

13   referenced a GAF score in her opinion is not a legitimate reason to reject the opinion overall.

14         The ALJ failed to provide specific and legitimate reasons to reject this opinion.

15         *2.     Dr. Washburn*

16         Dr. Washburn examined Ms. Spotted Elk in October 2011.  He opined that Ms. Spotted

17   Elk did not have the emotional stability to cope with the stress of full time, gainful employment.

18   Tr. 268.  He believed she would require 12 to 18 months in a PTSD counseling program to

19   develop the emotional coping skills she needs.  *Id.*

20         The ALJ gave this opinion little weight.  Tr. 27.  The ALJ found that the opinion

21   appeared to rely heavily on Ms. Spotted Elk's subjective reports, which the ALJ found to be

22   inconsistent with Dr. Washburn's observations of Ms. Spotted Elk having good eye contact,

23   adequate hygiene, an appropriate affect, and normal thought content and speech.  *Id.*  The ALJ

also noted that Dr. Washburn indicated that Ms. Spotted Elk could not recall three out of three objects after a delay, but could repeat six digits forward and three backwards.  Tr. 27.

The ALJ again merely provided his own interpretation of Dr. Washburn's observations and mental status examination findings, with no explanation why his interpretation was correct and Dr. Washburn's was not.  *See Orn*, 495 F.3d at 632.  Moreover, an ALJ does not provide an adequate reason for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.  *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  Dr. Washburn did not discredit Ms. Spotted Elk's statements about her symptoms, and he supported his opinion with his own clinical observations and assessment.  The ALJ's contrary interpretation, without more, was not a legitimate reason to reject the opinion.

The ALJ also found that Dr. Washburn's opinion was contrary to Ms. Spotted Elk's own reported ability to care for five children, to be independent in self-care, and to do her own housekeeping.  Tr. 27.  Ms. Spotted Elk reported to Dr. Washburn that she could perform these activities, stating that she relies on her oldest son for more strenuous tasks.  Tr. 267.  Dr. Washburn considered this report when opining that Ms. Spotted Elk did not have the emotional stability needed to cope with full time, gainful employment.  The ALJ fails to explain why his interpretation of Ms. Spotted Elk's activities is correct and Dr. Washburn's is not.  *Orn*, 495 F.3d at 632.  This was not a legitimate reason to reject the opinion.

The ALJ failed to provide specific and legitimate reasons to reject this opinion.

*3.    Dr. Wingert*

Dr. Wingert examined Ms. Spotted Elk in April 2012.  He diagnosed PTSD, chronic, depressive disorder NOS, and history of polysubstance dependence, in remission by self-report,

1   and assigned a GAF score of 55, indicating moderate symptoms or moderate difficulties in

2   social, occupational, or school functioning.  Tr. 287, DSM-IV at 34.  His cognitive assessment

3   revealed scores within the borderline to low-average range of ability, with basic reasoning skills

4   intact at a simple intellectual level and no marked indications of cognitive impairment, but with

5   specific weaknesses in general verbal abilities and tasks involving working memory.  Tr. 287.

6   Dr. Wingert noted that during the evaluation, Ms. Spotted Elk could understand, remember, and

7   carry out short and simple instructions, as well as more detailed instructions and tasks.  Tr. 288.

8   He opined that while she could maintain attention and concentration in the structured setting of

9   the exam, she might well have difficulties in a less supportive environment.  *Id.*  He opined that

10  she could make simple work-related decisions, but her anxiety and depression-related

11  symptomatology was pronounced to where she was limited in her ability to complete a normal

12  work day and work week without interruptions from her psychologically based symptoms.  *Id.*

13      The ALJ gave Dr. Wingert's opinion about Ms. Spotted Elk's ability to complete a

14  normal work day and work week little weight, finding that he appeared to rely solely on Ms.

15  Spotted Elk's reported complaints.  Again, an ALJ may not reject an examining physician's

16  opinion by questioning the credibility of the patient's complaints where the doctor does not

17  discredit those complaints and supports his ultimate opinion with his own observations.  *Edlund*,

18  253 F.3d at 1159.  Dr. Wingert did not discredit Ms. Spotted Elk's complaints, and supported his

19  opinions with his observations from his clinical interview and psychological and cognitive

20  testing.  The ALJ's contrary interpretation, without more, was not a legitimate reason to reject

21  the opinion.

22      The ALJ also found that this portion of the opinion contradicted the Dr. Wingert's

23  observations of Ms. Spotted Elk, which included noting that she was early to her appointment,

had a neat and presentable appearance with good grooming and good eye contact, and maintained a calm and comfortable composure.  Tr. 26.  Again, the ALJ may not substitute his own interpretation of the evidence for the doctor's.  *See Tackett*, 180 F.3d at 1102-03.  Dr. Wingert also noted that Ms. Spotted Elk would likely have greater difficulty functioning in a less supportive environment, an observation entirely consistent with Dr. Wingert's opinions about her ability to complete a normal work day and work week.  Tr. 288.  This was not a legitimate reason to reject the opinion.

Finally, the ALJ gave more weight to Dr. Wingert's opinions about Ms. Spotted Elk's cognitive functioning, finding that they were consistent with the objective testing he administered.  Tr. 26.  Ms. Spotted Elk asserts that this opinion does not undermine her claim of disability, which is premised on the limitations that stem from her anxiety and depression, not from a cognitive impairment.  Dkt. 11 at 13.  The court finds no error in the ALJ's evaluation of Dr. Wingert's opinion about Ms. Spotted Elk's cognitive functioning and sees no reason to disturb it.  However, as the ALJ did not give specific and legitimate reasons to reject the other portions of the opinion, the Court finds that the ALJ erred in evaluating the opinion.

All the doctors who treated or examined Ms. Spotted Elk opined that her limitations were more severe than the consulting doctors.  And yet the ALJ rejected the treating and examining doctors' opinions in favor of the reviewing doctors' opinions—opinions that are entitled to the least weight of all.  *Lester*, 81 F.3d at 830.  Because the ALJ failed to give specific and legitimate reasons for rejecting the treating and examining doctors' opinions, the ALJ's evaluation of the medical opinion evidence overall was erroneous.

**B.     Ms. Spotted Elk's credibility**

Ms. Spotted Elk argues that the ALJ erred in finding her not fully credible.  The ALJ did

1   not find that Ms. Spotted Elk was malingering.  Thus, the ALJ had to provide clear and

2   convincing reasons to reject her testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

3   Cir. 2001).  An ALJ does this by making specific findings supported by substantial evidence.

4   "General findings are insufficient; rather, the ALJ must identify what testimony is not credible

5   and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

6            The ALJ gave several reasons for finding Ms. Spotted Elk not fully credible.  The ALJ

7   found that Ms. Spotted Elk's treatment records show that her symptoms improved with

8   counseling and therapy; her allegations of social limitations were contradicted by her activities

9   involving interactions with others; her allegations of limitations in concentration, persistence,

10  and pace were contradicted by Dr. Wingert's intellectual testing and by her activities; and her

11  work history showed that she worked only sporadically before the alleged disability onset date.

12  Tr. 24-25.

13           A claimant's poor work history may constitute a valid basis for discounting a claimant's

14  credibility.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found

15  claimant's extremely poor work history and lack of propensity to work in her lifetime negatively

16  affected her credibility regarding her inability to work).  And the fact that a claimant left work

17  for reasons other than her alleged disability is also an issue of credibility.  *See Bruton v.*

18  *Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in

19  part due to fact that he left his job for reasons other than his alleged impairment).  The ALJ noted

20  that Ms. Spotted Elk had worked only sporadically and her earnings record showed that she had

21  earned only $4,444.53 in her lifetime.  Tr. 157-58.  In addition, the ALJ noted that Ms. Spotted

22  Elk reported in March 2012 that she was not working because she chose not to work outside the

23  home due to her need to care for her children.  Tr. 279.  Ms. Spotted Elk's poor work history and

1    reported reason for not working were a valid basis to find her allegations not fully credible.

2           Because the ALJ provided a valid reason for questioning Ms. Spotted Elk's credibility,

3    the Court need not address the other reasons the ALJ gave.  *See Carmickle v. Comm'r, Soc. Sec.*

4    *Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (the inclusion of improper reasons among other

5    proper reasons to discount a claimant's credibility does not negate the validity of the ALJ's

6    credibility determination).  However, the Court notes that the ALJ's adverse credibility finding is

7    based in part on the medical evidence the Court is directing the ALJ to reassess on remand.  The

8    ALJ may therefore find it appropriate to reassess the credibility of Ms. Spotted Elk's allegations

9    after reevaluating the medical evidence.

10          **C.      The ALJ's residual functional capacity finding**

11          Ms. Spotted Elk argues that substantial evidence does not support the ALJ's residual

12   functional capacity finding.  She bases this argument on the ALJ's errors in evaluating the

13   medical evidence, discussed above, and on other evidence that she alleges supports more

14   significant limitations than the ALJ found, including treatment notes from other providers and a

15   statement from Ms. Spotted Elk's son.  Dkt. 11 at 14-16.  As stated in the scheduling order, the

16   Court declines to address assignments of error not listed in the "issues presented" section .  Dkt.

17   10.  However, as with Ms. Spotted Elk's credibility, the ALJ may find it appropriate to

18   reevaluate other evidence after reevaluating the medical opinion evidence.

19          **D.      Remand for further proceedings**

20          Ms. Spotted Elk asks in her list of issues presented for the Court to give full weight to the

21   rejected evidence and make a finding of disability.  Dkt. 11 at 1.  She also asks in her conclusion

22   for a remand for further proceedings.  *Id* at 18.  In the typical case, where outstanding issues

23   must be resolved and it is not clear from the record that an ALJ would have to find a claimant

REPORT AND RECOMMENDATION - 11

disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). The Court concludes that this is such a case. Although the ALJ improperly rejected the medical opinion evidence, he gave at least one valid reason to find Ms. Spotted Elk not fully credible. The ALJ, after reevaluating the improperly rejected medical opinions, should have the opportunity to reweigh all of the evidence and make a new disability determination, a role that is inappropriate for this Court.

## CONCLUSION

The Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should (1) reevaluate the medical opinions of Dr. Christiansen, Dr. Washburn, and Dr. Wingert; (2) further develop the record and reweigh the evidence as the ALJ deems appropriate; and (3) redo the five-step disability evaluation as needed.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **August 1, 2016**. If no objections are filed, the Clerk shall note the matter for as ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 18th day of July, 2016.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12